UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| RITA LYNN CONN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:20-CV-94-HAI |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| ANDREW SAUL, *Commissioner of Social* | ) | & ORDER |
| *Security*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case returns to federal court after being remanded by District Judge Hood in 2018. *Conn v. Berryhill*, No. 6:18-CV-09-JMH, D.E. 14 (November 5, 2018) ("JMH Order"). Plaintiff Rita Lynn Conn argues the Administrative Law Judge ("ALJ") erred in regard to her claimed gastrointestinal issues and hand tremors when the ALJ found she was not "disabled" as defined for purposes of awarding Social Security benefits.

## I. Procedural Background Pre-Remand

Judge Hood described the pre-remand history of this case:

Conn initially filed an application for Title XVI Supplemental Social Security Insurance Benefits in August 2014, alleging disability as of July 1, 2014. [TR 171]. Conn alleged disability due to incontinence, stress, nerves, high blood pressure, thyroid issues, diabetes, and heart problems. [TR 213].

Prior to her current application for disability benefits, Conn was treated by Dr. John Michael Watts, her primary care physician, beginning in late 2013 for numerous physical and mental health complaints including chronic pain and numbness, frequent bowel movements, incontinence, abdominal cramping, headaches, hand tremors, fatigue, joint pain, diabetes, depression, and anxiety, among other ailments. [TR 318-21, 353-54, 383-84, 445-56]. Dr. Watts opined that Conn was disabled. [TR 359, 373].

1

> Due to complaints of abdominal cramping, incontinence, and frequent bowel movements, Dr. Watts referred Conn to Dr. Morris Beebe, a gastroenterologist. [TR 322-29]. An EGD and colonoscopy were performed on Conn. [TR 325]. These tests revealed a small hiatal hernia, mild nonerosive gastritis, diverticulosis, and a rectal polyp. [*Id.*].

JMH Order at 2-3. After filing for benefits, Conn was evaluated by other doctors, including state agency physicians. None found she qualified as disabled. Conn was denied benefits initially and upon reconsideration. Conn then obtained an administrative hearing in July 2016 before ALJ Jonathan Leiner. As Judge Hood noted,

> At the hearing, Conn testified that her "bowels" were her most serious medical issue. [TR 38]. Conn testified that she had lost approximately ten pounds. [TR 39]. Conn reported that her gastrointestinal issues led to frequent bowel movements and required her to use the restroom ten times per day on average. [*Id.*]. Additionally, Conn reported issues with incontinence and reported that Dr. Watts had prescribed Amodil for her symptoms. [TR 40-41]. Furthermore, Conn reported that she used over-the-counter medications and had tried dieting to relieve her symptoms.

*Id.* at 6.

The ALJ rendered a decision finding Conn "not disabled" on January 4, 2017. Conn appealed, and Judge Hood remanded the case for reconsideration.

First, Judge Hood found a lack of substantial evidence to support the ALJ's determination that Conn's gastrointestinal issues were not "severe." JMH Order at 13. Although Conn had testified that she lost weight, the ALJ found the record showed she had not. Judge Hood took issue with the ALJ basing his determination that Conn's bowel issues were not "severe" *solely* on Conn's lack of weight loss. *Id.* at 14. "[I]t is unclear," Judge Hood found, "how Conn's lack of weight loss, standing alone, indicates that her gastrointestinal health issues are not severe." *Id.* Judge Hood explained, "if there is medical evidence or research that suggests that severe gastrointestinal health problems are always accompanied by weight loss, then the ALJ needs to cite to that evidence to support his conclusion." *Id.*

2

Second, Judge Hood found that the ALJ failed to mention the opinion of Conn's treating physician Dr. Watts (in the form of a handwritten letter) or explain his reasoning for rejecting that opinion. JMH Order at 19. Judge Hood found this lack of engagement with Dr. Watts's opinion violated the "treating source rule," a regulation that has been rescinded, but which still applies to Conn's case. *Id.* at 21. Judge Hood found it was not harmless error when "the ALJ has neither mentioned Dr. Watts nor referred to his medical opinions in his written decision" without "provid[ing] specific reasons for refusing to assign controlling weight" to Dr. Watts's opinion under the treating source rule. *Id.* 24-26.

Third, Judge Hood ordered the ALJ to clarify his finding that Conn could return to her past relevant work (as a person who reads cardiac monitoring devices) when that finding was "inconsistent with his finding on residual function capacity." JMH Order at 27. "On remand," he stated, "if the ALJ finds that Conn cannot perform past relevant work as actually performed, the ALJ should consider whether Conn can perform past relevant work as generally performed." *Id.* at 28.

## II. Post-Remand History

After remand, additional evidence was submitted, and ALJ Leiner conducted a second hearing on October 2, 2019. D.E. 20-1 at 513. The ALJ heard testimony from Conn and impartial vocational expert ("VE") Jane Hall. *Id.* The ALJ again found that Conn's gastrointestinal issues were not "severe," ascribed little weight to Dr. Watts's opinion, and found that Conn was not disabled. In fact, the ALJ found she could return to her past relevant work as a "cardiac monitor," both generally and as she performed it in the past. *Id.* at 513-24.

On April 21, 2020, Conn brought this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's decision denying her application for disability insurance

benefits.  D.E. 1.  Both parties consented to the referral of this matter to a magistrate judge.  D.E.

9.  Accordingly, this matter was referred to the undersigned to conduct all proceedings and order

the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil

Procedure 73.  D.E. 8.  Following a couple of deadline extensions, the answer and record were

filed on October 23.  Conn moved for summary judgement on December 2, 2020 (D.E. 22), and

the Commissioner moved for summary judgment on December 31 (D.E. 24).

### III.  The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate

a disability claim.[1]  The ALJ followed these procedures in this case.  *See* D.E. 20-1 at 513-24.

At the first step, if a claimant is working at a substantial gainful activity, he is not

disabled.  20 C.F.R. § 404.1520(b).  In this case, the ALJ found that Conn "has not engaged in

substantial gainful activity since July 21, 2014, the alleged onset date."  D.E. 20-1 at 515.

At the second step, if a claimant does not have any impairment or combination of

impairments which significantly limit his physical or mental ability to do basic work activities,

then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  The

ALJ found that Conn "has the following severe impairments:  neck and back disorders; a history

of cardiac disorders; diabetes mellitus; migraine headaches; obesity."  D.E. 20-1 at 515.  Absent

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step
> inquiry defined in 20 C.F.R. § 404.1520.  Through step four, the claimant bears the burden of
> proving the existence and severity of limitations caused by her impairments and the fact that she is
> precluded from performing her past relevant work, but at step five of the inquiry, which is the
> focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in
> the economy that accommodate the claimant's residual functional capacity (determined at step
> four) and vocational profile.

*Id.* at 474 (internal citations omitted).

from this list is any mention of gastrointestinal issues or hand tremors, and Conn argues the ALJ

erred here.  D.E. 22 at 6-9.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1, then he is disabled.  20 C.F.R. § 404.1520(d).  The ALJ

found Conn failed to meet this standard.  D.E. 20-1 at 518.

If, as here, a claimant is not found disabled at step three, the ALJ must determine the

claimant's residual functional capacity ("RFC"), which is his ability to do physical and mental

work activities on a sustained basis despite limitations from his impairments.   20 C.F.R.

§ 404.1520(e).  The ALJ determined that Conn had the RFC to

> perform light work as defined in 20 C.F.R. 204.1567(b) that does not require
> lifting more than 20 pounds occasionally and 10 pounds frequently; sitting more
> than 6 hours, or standing and walking around more than 4 hours, throughout an 8-
> our work day; any climbing ladders, ropes, and scaffolds; more than occasional
> climbing ramps and stairs; more than frequent stooping; more than occasional
> kneeling, crouching, and crawling; or more than frequent exposure to
> environmental irritants.

D.E. 20-1 at 518.

At the fourth step, if a claimant's impairments do not prevent him from doing past

relevant work (given the ALJ's assessment of his RFC), he is not disabled.   20 C.F.R.

§ 404.1520(f).  The ALJ found that Conn was "capable of performing past relevant work as a

cardiac monitor" and such work does not require the performance of work-related activities

precluded by her RFC.  D.E. 20-1 at 523.  The ALJ specifically noted that Conn could return to

her prior line of work "as actually and generally performed."  *Id.*  Conn argues that the ALJ erred

here because he failed to specifically address the fact that she used to work 12-hour shifts, not 8-

hour shifts.  D.E. 22 at 11-14.

At the fifth step, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from doing other work that exists in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g). The ALJ found Conn was not disabled at this step. D.E. 20-1 at 524.

## IV. Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing

court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[2] It is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

---

[2] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

When a district court remands with specific "instructions concerning the scope of the remand and the issues to be addressed," then "[d]eviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Hollins v. Massanari*, 49 F. App'x 533, 536 (6th Cir. 2002) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989)).

> [T]he general rule [is] that, on the remand of a case after appeal, it is the duty of the lower court, or the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions . . . . Moreover, if the cause is remanded with specific directions, further proceedings in the trial court or agency from which appeal is taken must be in substantial compliance with such directions; and if the cause is remanded for a specified purpose, any proceedings inconsistent therewith is error[.]

*Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967). "These cases stand for the proposition that the administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order. These cases do not preclude the ALJ from acting in ways that go beyond, but are not inconsistent with, the district court's opinion." *Hollins*, 49 F. App'x at 536.

## V. Analysis

Conn raises several arguments, but one is dispositive of this matter. Despite being given clear guidance by Judge Hood, the ALJ again failed to properly apply the treating-source rule to Dr. Watts or even assess whether Dr. Watts is a treating source.

First, Judge Hood clearly determined that Dr. Watts qualifies as a treating source. *See* 20 C.F.R. § 404.1527(a)(2) (defining "treating source"). Judge Hood found:

> Here, Dr. Watts is a treating source physician. Dr. Watts has served as Conn's primary care physician since late 2013. Additionally, Watts treated Conn for numerous health conditions and referred her to multiple specialists. As a result, Dr. Watts was likely in the best position to provide a longitudinal picture of Conn's medical problems and functional limitations.

8

JHM Order at 22.   Indeed, Dr. Watts appears throughout the medical records in this case,

including the post-remand records.

Second, Judge Hood provided clear guidance, based on agency regulations and binding

case law, as to how the ALJ should assess the weight of Dr. Watts's opinions:

> Under the treating source rule, medical opinions from a treating source are given more weight than opinions from a nontreating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

> . . . .

> [A] treating source's medical opinion is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]"  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

> . . . .

> Additionally, the ALJ is required to "give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.  When an ALJ denies benefits, the decision:

>> must contain specific reasons for the weight given to [a] treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

> Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

JMH Order at 22-24.

Third, Judge Hood observed that Dr. Watts had opined that Conn is disabled.  JMH Order

at 3.  This opinion by Dr. Watts is rendered in a September 23, 2014 handwritten letter and in a

December 30, 2014 set of treatment notes.  *Id*. at 19.  Judge Hood found that the ALJ's failure to

even mention Dr. Watt's opinion "violates the treating source rule and justifies remand." *Id.* at

21. Judge Hood concluded:

> Here, the ALJ has neither mentioned Dr. Watts nor referred to his medical opinions in his written decision. As a result, the ALJ has failed to provide any reason for disregarding the medical opinions of Dr. Watts. Of course, there may be good reasons for disregarding the opinions of Dr. Watts but it is impossible to make that judgment without some discussion indicating that the ALJ considered the opinions of Dr. Watts with specific reasons for the weight assigned to those opinions.

*Id.* at 24.

> Dr. Watts's September 23, 2014 letter states:
>
> To whom it may concern:
>
> Rita Conn's major health issue[s include] obstructive sleep apnea, irritation of bowels [related to] diabetic gastroparesis, arthritis of knees, obesity, + diabetes. She also suffers from depression, but this is not her [primary] limiting disability. Rita has multiple factors related to her disability. Thanks for your consideration.

D.E. 20-1 at 359. Dr. Watts also wrote a notation in December 2014 that Conn "is unable to

work." *Id.* at 373. Judge Hood observed that, "Of course, Dr. Watts's opinions that Conn was

disabled or that Conn could not work are not medical opinions that are entitled to controlling

weight. Decisions about whether a claimant is disabled or is unable to work are reserved to the

Commissioner by law." JHM Order at 22.

After remand, the ALJ addressed Dr. Watts and his September 2014 letter in a single

paragraph. The ALJ did not mention Dr. Watts's note that Conn "is unable to work." The

following is the only paragraph in the ALJ's opinion that mentions Dr. Watts:

> As for opinion evidence, the undersigned, as directed by the Court has considered the September 2014 letter of Dr. John Watts (Exhibit 5F). Dr. Watts failed to set forth any function-by-function assessment of the claimant. His letter cites in support of a finding of disability the claimant's obstructive sleep apnea, asserted bowel incontinence, and depression, which—as discussed in analysis above—are not supported as "severe" impairments by the record evidence. The ultimate conclusion of disability remains an opinion reserved to the

> Commissioner.  Dr. Watts' conclusion as discussed is therefore summary and otherwise inconsistent with the evidence and given little weight.

D.E. 20-1 at 522.  Although the ALJ did at least mention Dr. Watts in his post-remand opinion, the ALJ failed to identify whether Dr. Watts was a treating source.  Nor did the ALJ provide any analysis as to whether he was a treating source or if so, explain why his opinion was afforded little weight.

As further pointed out by Judge Hood, when an ALJ chooses not to ascribe controlling weight to a treating source's opinions, the ALJ must show his work by analyzing the *Wilson* factors.  As Judge Hood made clear:

> [I]n deciding to completely disregard the medical opinions of Dr. Watts, the ALJ failed to consider the *Wilson* factors.  When a treating source's medical opinions are not given controlling weight, the ALJ:

>> must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

JMH Order at 25 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

As the Sixth Circuit has explained:

> If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician.  *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

> Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. 20 C.F.R. § 404.1527(d)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5.

11

The *Wilson* Court explained the two-fold purpose behind this procedural requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544. Because the reason-giving requirement exists to "ensur[e] that each denied claimant receives fair process," we have held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (emphasis added).

*Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009). The Court in *Blakley* reversed when ALJ neither addressed whether certain physicians qualified as treating sources nor discussed the *Wilson* factors in discounting their opinions. *Id.* at 407-09. Because the same error has occurred in this case, the same result must follow.

Here, the ALJ arguably addressed only two *Wilson* factors—the supportability of Dr. Watts's opinion and its consistency with the record as a whole. A failure to address all the *Wilson* factors may or may not be harmless. *Wilson*, 378 F.3d at 547.

> Remand is not necessary . . . if the ALJ's failure to provide good reasons is a "harmless *de minimis* procedural violation." *Blakley*, 581 F.3d at 409. Although we have yet to define "harmless error" in this context, we have identified three situations in which it might occur: (1) where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) where "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," and (3) "where the Commissioner has met the goal of . . . the procedural safeguard of reasons." *Wilson*, 378 F.3d at 547. . . . That said, "[a] procedural error is not made harmless simply because [the claimant] appears to have . . . little chance of success on the merits[,]" *Wilson*, 378 F.3d at 546 (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41 (D.C. Cir. 1977)); and where the error makes meaningful review

12

impossible, the violation of the good-reasons rule can never qualify as harmless error, *Blakley*, 581 F.3d at 409.

*Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 438 (6th Cir. 2018).

The error here is not harmless; none of the three identified harmless-error categories apply.  Dr. Watts's opinion was not patently deficient, the ALJ did not adopt Dr. Watts's opinion, and the goals of the procedural safeguards were not met.  Here, "the error makes meaningful review impossible."  *Shields*, 732 F. App'x at 438.  The ALJ never addressed whether Dr. Watts is a treating source.  Nor did he address the *Wilson* factors other than saying that "Dr. Watts failed to set forth any function-by-function assessment of the claimant" and that the conclusion in Dr. Watts's letter was "summary and otherwise inconsistent with the evidence."  The ALJ's failure to follow the procedural requirements of *Wilson* and its progeny is exacerbated by the fact that Judge Hood clearly described the analysis the ALJ needed to provide after remand, yet the ALJ still failed to follow the required analytical steps.

As in *Shields*,

> Reversal is required . . . because the ALJ failed to follow the treating-source regulation.  It is undeniable that [Dr. Watts] was one of [Conn]'s treating physicians. . . .  It is also uncontested that [Dr. Watts] treated [Conn] during the period that she alleges being disabled.  [Dr. Watts's] opinion therefore should have been accorded controlling weight absent (1) sufficiently specific reasons for discounting it and (2) a precise explanation of how those reasons lead to that conclusion.  *Rogers*, 486 F.3d at 243.  Moreover, even were such a conclusion properly reached, [Dr. Watts's] opinion was "still entitled to deference and [ought to have] be[en] weighed using *all* of the factors provided in 20 [C.F.R. §§] 404.1527 and 416.927[,]" *i.e.*, the *Wilson* factors. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (emphasis added).

*Shields*, 732 F. App'x at, 438.  "[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).

13

Here, the ALJ committed [the same errors as in *Blakley*]: not only did he fail to "explain in [his] decision whether [ ]he weighed [Dr. Watts] as an expert, a treater, or both," *see id.* at 408, he also provided no analysis of the treatment relationship. . . . [The ALJ's] fleeting comment[s are] insufficient . . . to show that the ALJ recognized that [Dr. Watts] had "an *ongoing* treatment relationship with [Conn] . . . [of] a *frequency consistent with accepted medical practice* for the type of treatment and/or evaluation required for [the] medical condition(s)." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (emphasis added).

*Shields*, 732 F. App'x at 440. Accordingly, this Court has no choice but to remand again.

Conn levies several other objections (including the assessment of her hand tremors), but this issue involving Dr. Watts is clearly dispositive of the matter. Upon remand, the Commissioner will be free to reconsider any other issue that warrants attention. 20 C.F.R. § 404.983(a); *Hollins v. Massanari*, 49 F. App'x 533, 536 (6th Cir. 2002).

Upon remand, the ALJ shall reconsider the opinions of treating-source physician Dr. Watts and address Dr. Watts's opinions in accordance with the treating-source rule and the regulations and cases discussed herein. Any post-remand analysis must include a discussion of the *Wilson* factors if the ALJ determines not to ascribe controlling weight to Dr. Watts's opinion. The Court offers no opinion on the ultimate outcome of this query. Rather, the ALJ is instructed to strictly comply with the Administration's procedures created to aid the claimant's understanding of the outcome and to facilitate meaningful review.

## VI. CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1)     Plaintiff's Motion for Summary Judgment (D.E. 22) is **GRANTED**.

(2)     The Commissioner's Motion for Summary Judgment (D.E. 24) is **DENIED**.

(3)     **JUDGMENT** will be entered in favor of the Plaintiff by separate order.

This the 12th day of March, 2021.



Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**

14